UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NARY YANG KMBUAAR,<br><br>           Plaintiff,<br><br>      v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>           Defendant. | No. 2:13-cv-829-EFB<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  The parties' cross-motions for summary judgment are pending.  For the reasons discussed below, plaintiff's motion is granted, defendant's motion is denied, and the matter is remanded for further proceedings.

I.     BACKGROUND

Plaintiff protectively filed an application for a period of disability and DIB on September 15, 2009, alleging that she had been disabled since September 15, 2009.  Administrative Record ("AR") 66, 151-154.  Her application was initially denied on December 14, 2009, and upon reconsideration on February 19, 2010.  *Id.* at 72-75, 78-82.  On April 7, 2011, a hearing was held

/////

/////

before administrative law judge ("ALJ") Laura S. Havens.[1]  *Id.* at 46-65.  Plaintiff was represented by counsel at the hearings, at which she and a vocational expert ("VE") testified.  *Id.*

On July 27, 2011, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i) and 223(d) of the Act.[2]  *Id.* at 23-31.  The ALJ made the following specific findings:

/////

/////

---

[1]  A hearing was originally held on November 18, 2010, but was rescheduled to April 7, 2011, to provide plaintiff an opportunity to retain counsel.  AR 39-45

[2]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*.  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq*.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.[3]

2. The claimant has not engaged in substantial gainful activity since September 15, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: depressive disorder, anxiety disorder, borderline intellectual functioning, low back pain, and right arm pain (20 CFR 404.1520(c)).

\* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.156).

\* \* \*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except she is limited to simple repetitive tasks.

\* \* \*

6. The claimant is capable of performing past relevant work as a stock clerk and as a warehouse worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

\* \* \*

7. The claimant has not been under a disability, as defined in the Social Security Act, from September 15, 2009, through the date of this decision (20 CFR 404.1520(f)).

*Id.* at 23-31.

Plaintiff requested that the Appeals Council review the ALJ's decision, *id.* at 17-18, and on March 7, 2013, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-6.

/////

---

[3] Plaintiff notes that her earning records reflect that her date last insured was December 2014, not December 2013. *See* AR 155. The court need not address the discrepancy as it is immaterial to the resolution of the pending motions.

II.     LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III.    ANALYSIS

Plaintiff argues that the ALJ erred by (1) failing to provide specific and legitimate reasons for rejecting Dr. Wakefield's opinions; (2) failing to adequately explain the basis for not finding that plaintiff met the listing criteria of 12.05B or 12.05C; and (3) failure to provide clear and convincing reasons for discrediting plaintiff's credibility.

A. <u>The ALJ Failed to Provide Specific and Legitimate Reasons for Rejecting Dr. Wakefield's Opinions</u>

Plaintiff first argues that the ALJ erred by not giving full weight to the opinion of Dr. Wakefield, an examining psychologist. ECF No. 15 at 8-11. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). Ordinarily, more weight is

given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id*; *Smolen v. Chater*, 80 F.3d 1273, 1295 (9th Cir. 1996). Furthermore, the opinion of an examining professional is generally afforded greater weight than an opinion from a non-examining professional. *Lester*, 81 F.3d at 831. To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings that support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id.* at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (*e.g.,* supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

The record contains two opinions from Dr. Wakefield. On November 17, 2009, Dr. Wakefield examined plaintiff and evaluated her mental limitations. AR 249-252. Dr. Wakefield diagnosed plaintiff with an anxiety disorder, borderline intellectual functioning (BIF), and psychosocial and environmental problems. *Id*. at 252. Dr. Wakefield opined that plaintiff could not handle her own funds; was not able to interact with co-workers, supervisors, and the public at a minimally acceptable level; she was able to follow simple repetitive tasks, but more complex procedures with substantial demands on English verbal skills would present difficulties; her ability to reason and make occupational, personal, and social decisions in her best interest were deficient; her social and behavioral functioning were generally appropriate; her concentration and pace were deficient, but her persistence was adequate. *Id*. at 252.

/////

Dr. Wakefield examined plaintiff a second time on May 14, 2011. He diagnosed her with the same mental health disorders but also diagnosed a depressive disorder and communication disorder. *Id*. at 388. It was Dr. Wakefield's opinion that plaintiff could perform simple repetitive tasks and some more complex procedures at a reduced pace, but tasks with substantial verbal demands would present difficulties. He opined that plaintiff would be able to interact with her co-workers, supervisors, and the public but only at a minimally acceptable level; that her ability to reason and make occupational, personal, and social decisions in her best interests was deficient; that her social and behavioral functioning were affected by anxiety; that her persistence and visual concentration was adequate; and that her pace and verbal concentration were deficient. *Id*. at 388.

The record also contains an opinion from Dr. Haroun, a non-treating psychiatrist. *Id*. at 257-271. On November 20, 2009, Dr. Haroun completed a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment. *Id*. Dr. Haroun opined that plaintiff was not limited in her ability to carry out short and simple instructions, but that she was moderately limited in her ability to understand, remember, and carry out detailed instructions. *Id*. at 265. It was also Dr. Haroun's opinion that plaintiff was not significantly limited in any of her social interactions. *Id*. at 270.

In weighing the medical opinions, the ALJ stated that he gave substantial weight to the Dr. Wakefield's first opinion (i.e. that of November 17, 2009) and to Dr. Haroun's opinion, but afforded Dr. Wakefield's second opinion was is characterized as "appropriate weight." *Id*. at 29-30. Plaintiff argues that (1) the ALJ effectively rejected Dr. Wakefield's first opinion despite purporting to give it substantial weight; and (2) that the ALJ did not provide specific and legitimate reasons for rejecting Dr. Wakefield's second opinion. ECF No. 15-1 at 11-16. As Dr. Wakefield's opinions were contradicted by Dr. Haroun's opinion, the ALJ was required to give "specific and legitimate" reasons for rejecting Dr. Wakefield's opinions. *Lester*, 81 F.3d at 831.

/////

/////

/////

1                  i.      The ALJ effectively rejected Dr. Wakefield's first opinion and therefore was required to provide "specific and legitimate" for doing so.

The ALJ purported to give "substantial weight" to Dr. Wakefield's first opinion. However, the ALJ's RFC determination does not include all of Dr. Wakefield's assessed limitations. AR 27, 29. Significantly, Dr. Wakefield found in his first opinion that the plaintiff could not interact with coworkers, supervisors, and the public at a minimally acceptable level. AR 252. Nonetheless, the ALJ found that plaintiff could perform medium work limited to simple repetitive tasks. AR 27. The ALJ did not explicitly address or find that plaintiff lacked the ability to interact with coworkers, supervisors, and the public at a minimally acceptable level. *See Id.*[4]

Furthermore, the one mental limitation assessed by the ALJ—limited to simple repetitive tasks—does not encompass Dr. Wakefield's opinion that plaintiff was limited in interacting with co-workers, supervisors, and the public. Social Security Ruling 85-15 provides:

> "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.

SSR 85-15. *See also Little v. Commissioner of Social Sec.*, 780 F. Supp. 2d 1143, 1153 (D. Or. 2011) (finding a restriction to unskilled work tasks with limited interaction with the public did not encompass a restriction on interaction with co-workers).

Thus, even with the ability to understand and carry out simple instruction, an individual is unable to perform unskilled work if they cannot respond appropriately to supervision and co-workers. While the ALJ purported to give substantial weight to Dr. Wakefield's first opinion, the ALJ omitted from her RFC determination any limitation regarding plaintiff's ability to interact with co-workers, supervisors, and the public, a limitation assessed by Dr. Wakefield. Further, the

---

[4] In his second opinion Dr. Wakefield found that plaintiff would be able to interact with co-workers, supervisors, and the public at a minimally acceptable level, AR 388, but the ALJ gave reduced weight to that opinion, *id*. at 29-30.

ALJ made an RFC determination that assumes such ability.  Thus, the ALJ did in fact reject Dr. Wakefield's opinion in that regard, but did so without stating any reason, let alone a specific and legitimate reason.  This constitutes reversible error.

        ii.        The ALJ did not give a "specific and legitimate" reason for rejecting Dr. Wakefield's second opinion.

The ALJ provided only two conclusory statements for why he afforded Dr. Wakefield's second opinion "appropriate weight."  The first is the ALJ's conclusion that the opinion was "not supported by the objective evidence in the file."  The second is the ALJ's conclusion that the opinion was "an underestimate of the [plaintiff's] capacity."  AR 29-30.

The first stated reason does not constitute a specific and legitimate reason for rejecting Dr. Wakefield's opinion.  An ALJ may satisfy her burden of providing specific and legitimate reasons for rejecting a contradicted medical opinion "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating h[er] interpretation thereof, and making findings."  *Embrey v. Bowen*, 849 F.2d 418, 421 (1988).  As explained by the Ninth Circuit:

> To say that medical opinions are not supported by sufficient objective findings does not achieve the level of specificity our prior cases have required even when the objective factors are listed seriatim.  The ALJ must do more than offer h[er] own conclusions.  He must set forth h[er] own interpretation and explain why [s]he, rather than the doctors, are correct.

*Regenniter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999).

The ALJ's decision here contains a summary of the objective medical evidence and opinion evidence of record, followed by her conclusion that the objective medical findings do not support Dr. Wakefield's second opinion.  The ALJ, however, does not identify any contradictory evidence or explain how Dr. Wakefield's opinion is unsupported by objective medical evidence.  As the ALJ has offered nothing more than her conclusion, without setting forth her interpretation of why the evidence does not support Dr. Wakefield's opinion, this first reason for rejecting Dr. Wakefield's second opinion is insufficient.

/////

/////

Likewise, the ALJ's other reason, that Dr. Wakefield's opinion was "an underestimate of [plaintiff's] capacity," is not specific and lacks any meaningful interpretation of the evidence.[5] The ALJ was required to do more than supply her conclusion that Dr. Wakefield's second opinion was an underestimate of plaintiff's functional capacity. *See McAllister*, 888 F.2d at 602. (ALJ must specify why a treating physician's opinions are flawed rather than offer broad and vague reasons.); *Magallnes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989) ("The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."); *Embrey*, 849 F.2d 421-22 ("The ALJ must do more than offer his conclusions."). The ALJ provided no explanation for why Dr. Wakefield's second opinion underestimated plaintiff's capacity, nor does she identify any evidence to support this conclusion. The ALJ's conclusory reasons are insufficient to reject an examining physician's opinion. *Embrey*, 849 F.2d 421-22. Accordingly, the ALJ erred in rejecting Dr. Wakefield's opinions.

B. <u>The ALJ failed to adequately explain the basis for not finding that plaintiff met the listing criteria of 12.05B or 12.05C.</u>

Plaintiff next argues that the ALJ failed to provide sufficient justification for why plaintiff did not satisfy listings 12.05B or 12.05C. At step three of the sequential evaluation, the ALJ determines whether a claimant's impairment or combination of impairments meet or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Where a claimant's impairment or impairments meets or equals a listed impairment in Appendix 1, the claimant is per se disabled. 20 C.F.R. § 416.920(d). "Once a per se disability is established, the ALJ has no discretion; he must award benefits." *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990).

/////

---

[5] In assessing plaintiff's intellectual functioning, Dr. Wakefield found that plaintiff's "non-native English appears to have resulted in an underestimate of her ability." AR 251. This qualification, however, appears in Dr. Wakefield's November 17, 2009 psychological evaluation. *Id*. The same qualification does not appear in his second assessment, likely due to the fact that a translator was present at the second evaluation. *Id*. at 384-388. As discussed below, testing from both evaluations resulted in IQ test scores which meet category 12.05(B) of the listing of impairments.

9

Listing 12.05—intellectual disability—"refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." The listing can be met by demonstrating "[a] valid verbal, performance, or full scale IQ test of 59 or less; [or] . . . [a] valid, verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 12.05(B)-(C). Thus, plaintiff meets the listing if (1) she has a valid IQ score of 59 or less and (2) the evidence demonstrates or supports onset of the impairment before age 22; or, if (1) she has a valid IQ score between 60 and 70, (2) the evidence demonstrates or supports onset of the impairment before age 22, and (3) she has a physical or other mental impairment imposing an additional and significant work-related limitation of function.

The record contains results from two separate IQ tests. AR 250, 386. A Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV) test administered by Dr. Wakefield resulted in a full scale IQ of 57, a verbal comprehension score of 54, and a perceptual reasoning score of 73. AR 250. Dr. Wakefield noted that, although plaintiff's intellectual ability was in the deficient range, as evidenced by the IQ score of 57, the level appeared to be an underestimate due to her English abilities. *Id*.

A second WAIS-IV test was administered on May 14, 2011 during Dr. Wakefield's second evaluation of plaintiff. AR 386. This second test was administered with the aid of an interpreter. AR 384. It produced similar results to the first test, indicating that plaintiff's full scale IQ score dropped to 54, her verbal comprehension dropped to 51, and her perceptual reasoning score rose slightly to 75. There was no finding that her English abilities affected the second test scores. *See* AR 384.

The scores from both tests satisfy category 12.05(B) of Listing of Impairments for intellectual disability.[6] Nevertheless, the ALJ found, without explanation, that plaintiff "did not have a valid verbal, performance, or full scale IQ of 59 or less," and subsequently concluded that

---

[6] They do not fall into the 12.05C range, as none of the scores were between 60 and 70.

1 the plaintiff did not meet the criteria for 12.05(B) or (C). *Id*. at 27.  The ALJ must, in some way,
2 explain why an IQ score is disregarded.  *Gomez v. Astrue*, 695 F. Supp. 2d 1049, 1057 (C.D. Cal.
3 2010) (citing *Thresher v. Astrue*, 283 F. App'x. 473, 475 & n. 5).[7]  Here, no explanation was
4 given for why the ALJ believed these IQ scores were invalid.

5 Defendant argues that the ALJ properly rejected Dr. Wakefield's opinions and therefore
6 justifiably found that plaintiff did not meet the 12.05(B) and (C) criteria.  ECF No. 18 at 13.  As
7 discussed above, the ALJ failed to give legally sufficient reasons for rejecting Dr. Wakefield's
8 opinions.  Furthermore, to summarily state that Dr. Wakefield's opinions are rejected fails to
9 explain why the test scores, which satisfy 12.05(B), are simply being disregarded.  More to the
10 point, the ALJ purported to give substantial weight to Dr. Wakefield's November 17, 2009
11 opinion, which is that date of the test results demonstrating that plaintiff had a full scale IQ of 57,
12 a verbal comprehension score of 54, and a perceptual reasoning score of 73.  AR 250.  Thus, the
13 opinion the ALJ accorded substantial weight was based in part on these IQ scores.  Even had the
14 ALJ properly rejected Dr. Wakefield's opinions, there is no indication that the ALJ questioned
15 Dr. Wakefield's objective findings.  *See* AR 29-30.  Indeed, the ALJ's written decision makes no
16 mention of plaintiff's IQ scores.  Instead of addressing those scores and explaining why they were
17 invalid, the written decision simply states a conclusion that the record does not contain any valid
18 IQ scores.  Accordingly, the ALJ failed to properly consider whether plaintiff's IQ scores
19 satisfied the listing 12:05(B) and (C).  *See Thresher*, 283 Fed. at 475 (remanding the case where
20 the ALJ failed to address, among other things, the validity of the plaintiff's IQ score).

21 Defendant also argues that plaintiff failed to meet her burden of proving that her mental
22 impairment manifested before the age of 22.  ECF No. 18 at 14.  A claimant is not required to

---

[7] The Ninth Circuit noted that it has "never decided what information is appropriately looked to in deciding [the] validity" of an IQ score. *Thresher*, 283 F. App'x. at 475 n. 6. Other courts, as *Thresher* noted, have said that scores can be questioned on the basis of "other evidence." *See*, *e.g*., *Clark v. Apfel*, 141 F.3d 1253, 1255-56 (8th Cir. 1998); *Popp v. Heckler*, 779 F.2d 1497, 1499-1500 (11th Cir. 1986) (per curiam.). Other courts have been more explicit and required a link between the evidence and the score. *See Brown v. Sec'y of Health & Human Servs*., 948 F.2d 268, 270 (6th Cir. 1991). At the very least, the ALJ must address the scores. In the case at bar, the ALJ did not specifically address plaintiff's IQ scores.

produce an IQ score generated prior to age 22 in order to meet the listing. *See Gomez v. Astrue*, 695 F. Supp. 2d 1049, 1061 (C.D. Cal. 2010). Several circuits have held that an adult IQ score creates a rebuttable presumption that the impairment existed before the age of 22. *See Hodges v. Barnhart*, 276 F.3d 1265, 1268–69 (11th Cir. 2001) (IQ tests after age 22 satisfy the listing criteria and "create a rebuttable presumption of a fairly constant IQ throughout life") (citing *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001), *Luckey v. U.S. Dept. Of Health and Human Services*, 890 F.2d 666, 668 (4th Cir. 1989)). District courts within the Ninth Circuit are split. *Compare, e.g., Forsythe v. Astrue*, 2012 WL 217751, at * 6-7 (E.D. Cal. Jan. 24, 2012) (collecting cases and adopting presumption); *Jackson v. Astrue*, 2008 WL 5210668, at * 6 (C.D. Cal. Dec.11, 2008) ("several circuits have held that valid IQ tests create a rebuttable presumption of a fairly constant IQ throughout a claimant's life . . . . The Court finds the reasoning of the Seventh, Eighth, and Eleventh Circuits to be persuasive"); *Schuler v. Astrue*, 2010 WL 1443882, at *6 (C.D. Cal. Apr. 7, 2010) ("a valid qualifying IQ score obtained by the claimant after age 22 creates a rebuttable presumption that the claimant's mental retardation began prior to the age of 22, as it is presumed that IQ scores remain relatively constant during a person's lifetime"); with *Clark v. Astrue*, 2012 WL 423635 (E.D. Cal. Feb.8, 2012) (declining to adopt rebuttable presumption); *Rhein v. Astrue*, 2010 WL 4877796, at *8 (E.D. Cal. Nov. 23, 2010) (finding rebuttable presumption would remove plaintiff's burden at step three).

This court concurs with the reasoning in *Forsythe* and adheres to the line of cases applying the rebuttable presumption. *See Wooten v. Colvin*, No. 2:12-cv-426 EFB, 2013 WL 5372855, at *3-4 (E.D. Cal. Sep. 25, 2013); *Woods v. Astrue*, No. CIV. S–10–2031–GEB–EFB, 2012 WL 761720, at *4 (E.D. Cal. Mar. 7, 2012). Here, the ALJ did not even acknowledge plaintiff's IQ scores, and therefore she failed to rebut the presumption.[8]

/////

/////

---

[8] The court need not decide whether plaintiff has an additional impairment "imposing a significant work-related limitation of function" as required by Listing 12.05(C). Plaintiff has IQ scores below 60, which would fall under Listing 12.05(B). That listing does not contain such a requirement.

Accordingly, the matter must be remanded must be remanded to allow the ALJ to consider whether plaintiff satisfied listing 12.05(B) or (C).

IV.     CONCLUSION[9]

The ALJ failed to apply the proper legal standard and support her decision with substantial evidence. Therefore, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is granted;

2. The Commissioner's cross-motion for summary judgment is denied;

3. The Clerk is directed to enter judgment in the plaintiff's favor; and

4. The matter is remanded for further consideration consistent with this opinion.

DATED: September 25, 2014.

*[signature]*
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

[9] As the matter must be remanded for the reasons stated herein, the court declines to address plaintiff's remaining argument.